UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LUKA MILOSAVLJEVIC, STEPHANIE JONES, and
GUILHERME PARREIRAS, on behalf of themselves
and others similarly situated,

                                                       Case No. 25-CV-03490-AT

                       Plaintiffs,

       v.

CASA CRUZ 61, LLC d/b/a CASA CRUZ, and
JUAN SANTA CRUZ,

                       Defendants.
------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF <u>DEFENDANTS' MOTION TO DISMISS</u>


**HELBRAUN & LEVEY LLP**
Brianne E. Murphy
Melissa L. Greenberg
Cynthia J. Park
Carli P. Miller
40 Fulton St., 28th Floor
New York, NY 10038
(212) 219-1193

*Attorneys for Defendants*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES...................................................................................................... ii

PRELIMINARY STATEMENT............................................................................................... 1

FACTS ...................................................................................................................................... 2

ARGUMENT I: PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY
PURSUANT TO FRCP 12(b)(6). .............................................................................................. 4

   A.  The *Twombly* and *Iqbal* Pleading Standards ....................................................... 4

   B.  Plaintiffs' Claims for Failure to Pay Minimum and Overtime Wages (Counts I-IV) Based
on Tip Credit Violations Should be Dismissed Because They Fail to State a Claim.......... 5

   C.  Plaintiffs' Overtime Claims (Counts I & III) Are Also Subject to Dismissal Because They
are Insufficiently Pled and Belied by The Very Documentary Evidence on Which They
are Based ................................................................................................................. 9

   D.  Plaintiffs' Tip Misappropriation Claims (Counts VII & VIII) Should be Dismissed as
They Are Insufficiently Pled ...................................................................................... 11

ARGUMENT II: PLAINTIFFS' WAGE NOTICE AND STATEMENT CLAIMS (COUNTS V &
VI) SHOULD BE DISMISSED BASED ON A LACK OF ARTICLE III STANDING AND THE
DOCUMENTARY EVIDENCE ................................................................................................ 12

   A.  Plaintiffs Lack Article III Standing to Assert Their Wage Notice and Statement
Claims ..................................................................................................................... 12

   B.  Plaintiffs' Wage Notice and Statement Claims are Belied by the Documentary
Evidence.................................................................................................................. 15

ARGUMENT III: UPON DISMISSAL OF PLAINTIFFS' FLSA CLAIMS, PLAINTIFFS'
REMAINING STATE LAW CLAIMS MUST BE DISMISSED FOR LACK OF
SUPPLEMENTAL JURISDICTION........................................................................................ 15

   A.  Legal Standard ...................................................................................................... 15

ARGUMENT III: IN THE ALTERNATIVE, DEFENDANTS SEEK A MORE DEFINITE
STATEMENT AS TO COUNTS I, III, VII AND VIII .................................................................. 17

ARGUMENT IV: ALTERNATIVELY, ARBITRATION MUST BE COMPELLED AS TO
PLAINTIFF PARREIRAS AND PLAINTIFF JONES ................................................................ 18

   A.  Legal Standard ...................................................................................................... 18

   B.  Should the Court Decline to Dismiss Plaintiffs' Claims, the Court Must Compel
Arbitration as to Plaintiff Parreiras and Plaintiff Jones ...................................... 19

CONCLUSION........................................................................................................................ 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Fam. Life Assurance Co. of New York v. Baker*,
848 F. App'x 11 (2d Cir. 2021) ............................................................................... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... 4, 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 4

*Dumitru v. Princess Cruise Lines, Ltd.*,
732 F. Supp. 2d 328 (S.D.N.Y. 2010) ..................................................................... 19

*Gomez v. Kitchenette 123 Inc.*,
No. 16-CV-3302 (AJN), 2017 WL 4326071 (S.D.N.Y. Sept. 5, 2017)....................................... 6

*Guthrie v. Rainbow Fencing Inc.*,
113 F.4th 300 (2d Cir. 2024) ................................................................................ 13

*Hernandez v. 99 Thai Playground LLC*,
No. 19CV01257ALCSN, 2022 WL 18539303 (S.D.N.Y. Nov. 28, 2022) ........................... 8, 14

*Hernandez v. RNC Indus., LLC*,
No. 21-CV-04518 (JS)(ST), 2024 WL 964932 (E.D.N.Y. Mar. 6, 2024) ............................... 18

*In re Lehman Bros. Sec. & Erisa Litig.*,
684 F. Supp. 2d 485 (S.D.N.Y. 2010) ..................................................................... 13

*Momin v. Quantierra Advisors LLC*,
No. 21-CV-612 (JGK), 2022 WL 2002282 (S.D.N.Y. June 3, 2022) ..................................... 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 24, 103 S. Ct. 927 (1983)..................................................................... 18

*Pelman ex rel. Pelman v. McDonald's Corp.*,
396 F. Supp. 2d 439 (S.D.N.Y. 2005) ..................................................................... 17

*Perez v. E.P.E. Enter. Corp.*,
    22-CV-6353, 2024 WL 1632255 (E.D.N.Y. Apr. 15, 2024) ................................................. 14

*Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington Union Free Sch. Dist.*,
    478 F.3d 494 (2d Cir. 2007).................................................................................................... 13

*Rest. L. Ctr. v. United States Dep't of Lab*,
    120 F.4th 163 (5th Cir. 2024) ................................................................................................... 6

*Sevilla v. House of Salads One LLC*,
    No. 20CV6072PKCCLP, 2022 WL 954740 (E.D.N.Y. Mar. 30, 2022) .................................. 13

*Tulczynska v. Queens Hosp. Ctr.*,
    No. 17 CIV. 1669 (DAB), 2019 WL 6330473 (S.D.N.Y. Feb. 12, 2019)......................... 11, 15

*Williams v. 2000 Homes Inc.*,
    No. 09-CV-16(JG)(JMA), 2009 WL 2252528 (E.D.N.Y. July 29, 2009) ................................ 5

**Statutes**

28 U.S.C. § 1367 .......................................................................................................................... 13

29 C.F.R. § 531.56(e) ................................................................................................................. 5, 6

Fair Labor Standards Act, 29 U.S.C. §§ 201*, et seq.* ................................................................... 1

New York Labor Law, N.Y. Lab. Law §§ 1, *et seq* ...................................................................... 1

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2 ........................................................................ 16

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.3 ........................................................................ 16

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9 .......................................................................... 8

Rule 12(b)(1) of the Federal Rules of Civil Procedure .................................................................. 1

Rule 12(b)(6) of the Federal Rules of Civil Procedure ........................................... 1, 4, 12, 17, 18

Rule 12(e) of the Federal Rules of Civil Procedure .............................................................. 1, 18

Defendants Casa Cruz 61, LLC d/b/a Casa Cruz and Juan Santa Cruz, by their attorneys, Helbraun & Levey LLP, respectfully submit this memorandum of law in support of their: (1) motion to dismiss Plaintiffs' Collective and Class Action Complaint ("Complaint") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"); (2) motion for a more definite statement pursuant to Rule 12(e) of the FRCP; or, in the alternative, (3) motion to compel arbitration pursuant to Rule 12(b)(3).

## PRELIMINARY STATEMENT

Plaintiffs Luka Milosavljevic ("Mr. Milosavljevic"), Stephanie Jones ("Ms. Jones"), and Guilherme Parreiras ("Mr. Parreiras") (collectively, "Plaintiffs") assert various claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and the New York Labor Law, N.Y. Lab. Law §§ 1, *et seq*. ("NYLL") against Defendants Casa Cruz 61, LLC d/b/a Casa Cruz ("Casa Cruz") and Juan Santa Cruz ("Mr. Santa Cruz") (collectively, "Defendants") for purported wage and hour violations.  However, their Complaint fails in its entirety: it misapplies the governing legal standards, relies on vague and generic assertions, and ignores dispositive documentary evidence.

Accordingly, the Complaint must be dismissed in its entirety, with prejudice.

## FACTS

The Complaint alleges that Plaintiffs were employed by Defendants as servers during various periods of time from October 2022 to December 2024.  *See* Compl. ¶¶ 10, 12, 14, 55-56, 66-67, 74-75. Plaintiffs allege that, during their employment, Defendants denied Plaintiffs and other waitstaff "minimum and overtime wages by improperly paying them at a 'tipped' minimum wage rate without satisfying the strict tip credit requirements" of the FLSA and NYLL; illegally

retained gratuities <u>on</u> <u>one</u> <u>occasion</u>; and failed to furnish proper wage notices and statements.  *See* Compl. ¶¶ 2-4.

In truth, Defendants strictly adhered to the applicable wage and hour laws set forth by both the FLSA and NYLL as they lawfully compensated Plaintiffs at the applicable tipped minimum wage rate for all hours worked as servers where they were engaged in a single tipped occupation and performed only work that is customarily and regularly performed in the restaurant industry by tipped employees; properly compensated Plaintiffs on the rare occasion that they worked in excess of forty hours per week as supported by the relevant time records; lawfully distributed all gratuities to Plaintiffs; and provided Plaintiffs with sufficient wage notices and statements. *See* Compl. ¶¶ 35, 39; *See* Declaration of William Hannon ("Hannon Decl."), Ex. A-E.  Plaintiffs have not – <u>and</u> <u>cannot</u> – assert any factual support for their bare conclusory assertions to the contrary.

Even assuming *arguendo* that Plaintiffs' claims are properly pled – which they are not – Plaintiffs' Complaint still fails as a matter of law because the claims are belied by the documentary evidence which demonstrates that Plaintiffs were properly compensated and provided with the requisite wage notices and statements.  *See* Hannon Decl., Ex. A-E.

Moreover, even if the Court declines to dismiss the Complaint in its entirety, it must compel arbitration as to Plaintiff Parreiras and Plaintiff Jones, both of whom executed valid arbitration agreements. *See* Hannon Decl., Ex. F-G.

**Plaintiff Luka Milosavljevic**

Plaintiff Milosavljevic was employed by Defendants as a server from approximately October 2022 until October 2024. *See* Compl. ¶ 55. He was included in the front of house ("FOH") tip pool in accordance with his customer facing duties, and lawfully compensated under both the FLSA and NYLL. *See* Compl. ¶¶ 55-56.

**Plaintiff Stephanie Jones**

Plaintiff Jones was employed by Defendants as a server from approximately April 2024 until December 2024. *See* Compl. ¶ 66. She was included in the FOH tip pool in accordance with her customer duties, and lawfully compensated under both the FLSA and NYLL. *See* Compl. ¶¶ 66-67.

**Guilherme Parreiras**

Plaintiff Parreiras was employed by Defendants as a server from approximately May 2024 until December 2024. *See* Compl. ¶ 74. He was included in the FOH tip pool in accordance with his customer facing duties, and lawfully compensated under both the FLSA and NYLL. *See* Compl. ¶¶ 74-75.

**Procedural History**

Plaintiffs commenced this action on April 28, 2025 and filed the operative Complaint for purposes of this motion on April 29, 2025. (ECF No. 5), asserting individual and class claims under the FLSA and the NYLL. The Complaint seeks relief on behalf of two putative groups—the "FLSA Collective" and the "NYLL Class"—and alleges the following causes of action:

(1) Failure to pay overtime wages under the FLSA;

(2) Failure to pay minimum wage under the NYLL;

(3) Failure to pay overtime wages under the NYLL;

(4) Failure to pay all wages owed under the NYLL;

(5) Failure to provide proper wage notices under the NYLL ;

(6) Failure to provide proper wage statements under the NYLL;

(7)  Tip misappropriation in violation of the FLSA; and

(8) Tip misappropriation under the NYLL.

Counts I-IV are based on Plaintiffs' assertion that Defendants unlawfully availed themselves of the tip credit. Counts V and VI are premised on Plaintiffs' theory that Defendants failed to provide proper wage notices and wage statements to Plaintiffs. Lastly, Counts VII and VIII allege that Defendants improperly withheld tips from Plaintiffs -- on one occasion. As demonstrated below, Plaintiffs' allegations are legally and factually deficient, and dismissal of the Complaint is therefore warranted as a matter of law.

## ARGUMENT

### I.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY PURSUANT TO FRCP 12(b)(6)

As to each cause of action asserted, Plaintiffs fail to satisfy the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As detailed more fully below, Plaintiffs' claims are based on mere speculation and lack concrete factual allegations. The Complaint merely recites legal conclusions and the elements of claims under the FLSA and NYLL, without providing the factual specificity required to survive a motion to dismiss. Accordingly, Plaintiffs' Complaint should be dismissed in its entirety.

#### A.    The *Twombly* and *Iqbal* Pleading Standards

Under FRCP 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545-55 (internal quotations omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotations omitted).

To survive a Rule 12 motion, a complaint must set forth sufficient factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While

a court must "accept all of plaintiff's factual allegations…as true and draw inferences from those allegations in the light most favorable to the plaintiff," *United States v. Space Hunters, Inc.*, 429 F.3d 416, 424 (2d Cir. 2005), a court will not give any weight to legal conclusions couched as factual allegations. *Halebian v. Berv*, 590 F.3d 195, 203-04 (2d Cir. 2009); *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007). In short, a complaint either must contain sufficient factual matter to state a claim to relief that is plausible on its face or it must be dismissed. *Iqbal*, 129 S. Ct. at 1949.

### B. Plaintiffs' Claims for Failure to Pay Minimum and Overtime Wages (Counts I-IV) Based on Tip Credit Violations Should be Dismissed Because They Fail to State a Claim

Plaintiffs allege that Defendants violated the FLSA and NYLL by failing to pay minimum wage and overtime compensation because they "improperly claimed the tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours far exceeding twenty percent (20%) of the total hours worked during a given shift each workweek." *See* Compl. ¶ 38. Plaintiffs provide a list of tasks they deem "non-tipped related activities" including, "preparing event space for events, breaking down event spaces, cleaning and refilling and igniting fuel lamps, folding napkins, restocking glassware and flatware, and organizing furniture." *See* Compl. ¶¶ 56, 67, and 75. However, Plaintiffs' reliance on a theory of excessive side work is misplaced, legally unfounded and requires dismissal of the claims premised on this theory. *See Williams v.2000 Homes Inc.*, No. 09-CV-16(JG)(JMA), 2009 WL 2252528, at *6 (E.D.N.Y. July 29, 2009) (finding dismissal appropriate where plaintiff failed to plead claims under the applicable standard).

With respect to the FLSA, the U.S. Department of Labor's "dual jobs" standard is the governing framework. 29 C.F.R. § 531.56(e). Under this regulation, employers may apply a tip

credit, so long as the employee is not working in a distinct, non-tipped occupation. The regulation

explicitly distinguishes between (i) employees in dual occupations (*e.g.*, a maintenance worker

who is also a waiter), and (ii) tipped employees who occasionally perform related, non-tip-

producing tasks as part of their tipped role (i.e. side work):

> In some situations an employee is employed in a dual job, as for
> example, where a maintenance man in a hotel also serves as a
> waiter. In such a situation the employee, if he customarily and regularly
> receives at least $[30] a month in tips for his work as a waiter, is a
> tipped employee only with respect to his employment as a waiter.
> He is employed in two occupations, and no tip credit can be taken
> for his hours of employment in his occupation of maintenance man.
> Such a situation is distinguishable from that of a waitress who
> spends part of her time cleaning and setting tables, toasting bread,
> making coffee and occasionally washing dishes or glasses… ***Such
> related duties in an occupation that is a tipped occupation need
> not by themselves be directed toward producing tips***.

29 C.F.R. § 531.56(e) (emphasis added).

Thus, the key inquiry under § 531.56(e) is whether the employee works in a distinct, non-

tipped occupation or merely performs related side work as part of their tipped occupation.

Critically, the regulation does not impose a quantitative limit (i.e. 20%) on the amount of related,

non-tip-producing work that may be performed within the tipped occupation. Further, federal

courts have consistently held that the dual jobs standard of § 531.56(e), not the 80/20 rule, is the

governing standard for determining tip credit eligibility under the FLSA. *Gomez v. Kitchenette*

*123 Inc.*, No. 16-CV-3302 (AJN), 2017 WL 4326071, at *2 (S.D.N.Y. Sept. 5, 2017) ("29 C.F.R.

§ 531.56(e) (setting requirements as to when a tip credit may count towards the minimum wage

for an employee with a "dual job"—i.e. who works part of the time in a tipped position, and part

of the time in a non-tipped position)"); *See also Rest. L. Ctr. v. United States Dep't of Lab.*, 120

F.4th 163, 173 (5th Cir. 2024) ("[A] waitress doing typical waitress duties remains a waitress, even

if (in five-minute increments throughout her workweek) she spends 60 percent of her time waiting tables, 10 percent cleaning tables, 10 percent toasting bread, 10 percent making coffee, and 10 percent washing dishes. The dual jobs regulation—and common sense—tells us that the waitress is 100 percent engaged in the single tipped occupation of waitressing—she is not 60 percent a waitress, 10 percent a janitor, 10 percent a baker, 10 percent a barrista [sic], and 10 percent a dishwasher.".

Plaintiffs fail to state a claim under this standard. Critically, the Complaint does not allege that any of the Plaintiffs held any specific role at Casa Cruz other than as a "Server." *See* Compl. ¶¶ 55, 67, and 75. Nor does the Complaint allege that Plaintiffs were assigned to any distinct, non-tipped occupations as dishwashers, line cooks, janitors, etc. Rather, Plaintiffs merely provide a list of side tasks commonly performed by waitstaff in restaurants and label them "non-tipped related activities". However, such duties, including cleaning and refilling and igniting fuel lamps, folding napkins, restocking glassware and flatware, and organizing furniture, etc., are incidental to and supportive of guest service, the primary tipped function. *See, e.g., Pellon v. Bus. Representation Int'l, Inc*., 528 F. Supp. 2d 1306, 1313-14 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008) ("The duties that [p]laintiffs have performed in this case are not those of another occupation, even if there is some overlap among tasks between different occupations. They are, at worst, 'related duties in an occupation that is a tipped occupation' and they 'need not by themselves be directed toward producing tips.'") (citing 29 C.F.R. 531.56(e)).

Plaintiffs have emphasized tipped and non-tipped duties performed within the same tipped occupation, erroneously focusing on a theory of excessive side work as the basis for liability. They have not – ***and cannot*** – allege that they worked in a distinct, non-tipped occupation while working

at Casa Cruz.  Absent such allegations, there is no basis to conclude that Defendants misapplied the tip credit under the FLSA.

Similarly, Section 146-2.9 of the Hospitality Industry Wage Order emphasizes "tipped and non-tipped occupations," not duties:

> On any day that a service employee or food service worker works at a non-tipped ***occupation***
> (a) For two hours or more, or
> (b) For more than 20 percent of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day.

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9 (emphasis added); *See also Hernandez v. 99 Thai Playground LLC*, No. 19CV01257ALCSN, 2022 WL 18539303, at *5 (S.D.N.Y. Nov. 28, 2022), *report and recommendation adopted*, No. 19CV01257ALCSN, 2023 WL 1400626 (S.D.N.Y. Jan. 31, 2023) (finding defendant ineligible to apply a tip credit where plaintiff worked in non-tipped occupations as a dishwasher and food preparer in addition to working in a tipped occupation as a delivery worker during the same shift).

Further, the language of the regulation excludes a side work standard, exemplified by its distinction between employees who perform kitchen work and employees who perform guest-facing work:

> An employee has a daily schedule as follows: 8 a.m. to 9:45 a.m., food preparation; 9:45 a.m. to 1:30 p.m., serving food in the restaurant; takes ½ hour meal period; 2:00 p.m. to 4:30 p.m. serving food in the restaurant. That employee has worked 8 hours total, consisting of 6 hours, 15 minutes as a food service worker and 1 hour, 45 minutes in a non tipped occupation. Twenty percent of an 8 hour shift is 1 hour, 36 minutes. Although the employee worked for less than two hours at the non-tipped occupation, he/she has worked for more than 20 percent of his/her shift at the non-tipped occupation. Therefore, the employee is subject to no tip credit for that day.

*Id*.

Plaintiffs have not adequately alleged that this threshold was met. Even taking as true for the purposes of this motion that Plaintiffs engaged in duties including "preparing event space for events, breaking down event spaces, cleaning and refilling and igniting fuel lamps, folding napkins, restocking glassware and flatware, and organizing furniture", *see* Compl. ¶¶ 56, 67, and 75, the purported tasks Plaintiffs identify are all duties customarily performed by servers and other tipped employees in the restaurant industry.

As the New York Department of Labor ("NY DOL") guidelines make clear, "[a]ny work that is customarily and regularly performed in the industry by tipped employees will not be counted as non-tipped work." *See* NY DOL, *Tips and Gratuities FAQ*, https://dol.ny.gov/system/files/documents/2025/01/tips-and-gratuities-frequently-asked-questions.pdf (last visited Sept. 5, 2025*)*. Plaintiffs have not established that these side work duties fall outside this category.

Because the tip credit remains valid under both federal and state law for time spent performing duties related to a tipped occupation—even if those duties are not themselves tip-generating—Plaintiffs' minimum and overtime wage claims under the FLSA and NYLL (Counts I, II, III and IV), all of which rest on this flawed premise, must be dismissed.

### C. Plaintiffs' Overtime Claims (Counts I & III) Are Also Subject to Dismissal Because They are Insufficiently Pled and Belied by The Very Documentary Evidence on Which They are Based

Plaintiffs allege that - on the rare occasion that they worked overtime - Defendants failed to properly compensate them for all hours worked in excess of forty in a workweek.

With respect to Plaintiff Milosavljevic, the Complaint alleges that he was typically scheduled to work approximately thirty-five to forty-three hours during four to six shifts per week

from approximately 3:30pm to 11:00pm, or 4pm to 12am. *See* Compl. ¶¶ 57-58. Plaintiffs further allege that from January 1, 2024 through his termination, Plaintiff Milosavljevic was paid 'an "OT Blended" rate that varied depending on the amount of overtime hours worked, but always fell below the minimum wage.' *See* Compl. ¶ 61. Plaintiffs provide the week of April 8, 2024 to April 14, 2024, during which they claim Plaintiff Milosavljevic worked 41.29 hours and was paid '$16.00 per hour for 2.14 hours of training, but the only overtime premium he received was an improper "OT Blended" rate of $5.46 per hour for his 1.29 of his overtime hours worked.' *See* Compl. ¶¶ 62-63. Plaintiffs further allege that from the start of Plaintiff Milosavljevic's employment through December 31, 2023, he was paid $10.00 per overtime hour. *See* Compl. ¶¶ 57-58. To support this allegation, Plaintiffs rely on one workweek, the week of May 8, 2023 to May 14, 2023, during which they claim Plaintiff Milosavljevic worked approximately 51.23 hours and was paid "$10.00 per hour for 11.23 of his overtime hours…with no overtime premium." *See* Compl. ¶¶ 59-60. However, the documentary evidence refutes this claim. Plaintiff Milosavljevic's time records clearly show that he only worked 33.41 hours this week but was erroneously paid for three additional days that predated this workweek (May 3, 4 and 7, 2023) on this paycheck. Thus, Plaintiff Milosavljevic did not work overtime during this week and was therefore not owed any overtime compensation. *See* Hannon Decl., Ex. A.

Regarding Plaintiff Jones, Plaintiffs allege she was typically scheduled to work approximately twenty-five to forty-one hours during four to six shifts per week from approximately 3:30pm to 11:00pm, or 4pm to 12am, and that throughout her employment, Plaintiff Jones was paid 'an "OT Blended" rate that varied depending on the amount of overtime hours worked, but always fell below the minimum wage.' *See* Compl. ¶¶ 68-69. Plaintiffs provide the week of June 3, 2024 to June 9, 2024, during which they claim Plaintiff Jones worked 40.78 hours

and was paid "$16.00 per hour for 5.84 hours of training, but the only overtime premium she received was an improper 'OT Blended' rate of $4.45 per hour for her .78 of overtime hours worked." *See* Compl. ¶¶ 70-71.

The Complaint is devoid of any factual claims alleging that Plaintiff Parreiras ever worked in excess of forty hours in a single workweek while employed at Casa Cruz.

Plaintiffs' overtime claims cannot pass muster as they fail to articulate the overtime rate Plaintiffs should have been paid. While each of Plaintiffs' claims identify one workweek in which the employee's hours exceeded forty; critically, Plaintiffs fail to specify the rate they believe they should have received. Moreover, Plaintiffs' overtime claims rely solely on one workweek. Even if accepted as true, these allegations fall woefully short of pleading a systemic pattern of overtime violations under both the FLSA and NYLL.

Further, Plaintiffs' pleading is confusing, as by Plaintiffs' own admission, Defendants compensated Plaintiffs for the overtime hours they worked, and the documentary record confirms that Plaintiffs were in fact paid overtime.  The Court can consider this evidence in deciding the instant motion as it is both incorporated by reference in the Complaint and integral to Plaintiffs' overtime claims.  *See Tulczynska v. Queens Hosp. Ctr.*, No. 17 CIV. 1669 (DAB), 2019 WL 6330473, at *4 (S.D.N.Y. Feb. 12, 2019) (holding that extrinsic evidence may be considered on a motion to dismiss when that "evidence is incorporated by reference in the pleading, or when a court deems the evidence to be 'integral' to at least one claim in the pleading.").

Even a cursory review of the wage statements provided for the weeks in question demonstrates that Plaintiffs Milosavljevic and Jones were paid straight time wages for all hours worked that week <u>and</u> an additional overtime premium for the hours worked in excess of forty. This evidence therefore demonstrates that Plaintiffs were properly paid for all overtime worked.

11

Therefore, Plaintiffs' overtime claims (Counts I and III) cannot survive FRCP 12(b)(6) scrutiny and should be dismissed. In the event the Court declines the foregoing relief, these claims are ripe for summary judgment based on the documentary evidence.

### D.  Plaintiffs' Tip Misappropriation Claims (Counts VII & VIII) Should be Dismissed as They Are Insufficiently Pled.

Plaintiffs allege that Defendants misappropriated tips in violation of the FLSA and NYLL because they "implemented an invalid tip pooling scheme whereby Defendants unlawfully retained tips that were meant for Waitstaff. Defendants were accordingly ineligible to avail themselves of the tip credit under the FLSA and NYLL." *See* Compl. ¶ 40. In support of these claims, Plaintiffs advance only vague and conclusory allegations about a one-off incident:

> on or around September 14, 2024, Waitstaff complained about a significant underpayment in tips, and Defendants' failure to provide tip records available for review. Shortly thereafter, Defendants acknowledged their failure to accurately compensate Waitstaff for the tips earned and stated that the underpayment would appear in the Waitstaff's next paycheck. Defendants never paid Waitstaff the underpayment of tips they earned in the next paycheck, nor any other subsequent paycheck received and therefore unlawfully retained the waitstaff's tips.

*See* Compl. ¶¶ 41-43.

Plaintiffs' tip misappropriation allegations are precisely the kind of thread-bare allegations *Twombly* and *Iqbal* prohibit. Absent from the pleadings are ***any*** details as to the circumstances surrounding the alleged September 2024 underpayment. Rather, Plaintiffs make sweeping allegations that tips were "unlawfully retained" without providing any factual foundation – they fail to describe who allegedly retained these tips, how such tips were allegedly retained, which specific payments were affected, what amount of tips were allegedly misappropriated and/or any other details about the nature of the alleged misconduct. The claims are pled so ambiguously that

Defendants cannot reasonably investigate or respond to the allegations. Accordingly, Counts VII and VIII must be dismissed.

## II.    PLAINTIFFS' WAGE NOTICE AND STATEMENT CLAIMS (COUNTS V & VI) SHOULD BE DISMISSED BASED ON A LACK OF ARTICLE III STANDING AND THE DOCUMENTARY EVIDENCE

Plaintiffs allege that Defendants did not provide the required wage notice and statements "to avoid informing them of their rights under the NYLL and therefore avoid paying them the proper minimum and overtime wage rates." *See* Compl. ¶ 54. However, these claims fail as a matter of law because Plaintiffs lack Article III standing to assert these claims and the documentary evidence clearly refutes these claims.

### A. Plaintiffs Lack Article III Standing to Assert Their Wage Notice and Statement Claims

To establish Article III standing, Plaintiff must show an "injury in fact," "a causal connection between the injury and the conduct complained of," and a likelihood that "the injury will be redressed by a favorable decision." *Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington Union Free Sch. Dist.*, 478 F.3d 494, 498 (2d Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The mere fact that a complaint is styled as a collective or class action does not mean that Plaintiff can avoid the requirement to plead standing. *In re Lehman Bros. Sec. & Erisa Litig.*, 684 F. Supp. 2d 485, 491 (S.D.N.Y. 2010).

Additionally, even if the Court can exercise supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367 (and it cannot, as set forth below), the Second Circuit has held "that the supplemental jurisdiction statute does not excuse [plaintiff] from demonstrating that he has standing to maintain his state law claim[s] for statutory damages." *Guthrie v. Rainbow Fencing Inc*., 113 F.4th 300, 304-05 (2d Cir. 2024).

13

In *Guthrie*, the Second Circuit held that "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." 113 F.4th at 308. "[U]nless the plaintiff-employee can show that he or she would have undertaken [corrective] advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact." *Id*. Generalized claims of confusion or speculative economic injury are not enough. "[T]he plaintiff-employee cannot 'assume[] this conclusion without analysis' or rely on 'speculation and conjecture.'" *Id*. at 309 (quoting *Quieju v. La Jugueria Inc*., No. 23-CV-264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)); *see also Sevilla v. House of Salads One LLC*, No. 20CV6072PKCCLP, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022) (holding lack of subject matter jurisdiction over wage notice and wage statement claims because "[t]echnical statutory violations that do not lead 'to either a tangible injury or something akin to a traditional cause of action' cannot sustain Article III standing in federal court"); *see also Hernandez*, 2022 WL 18539303 at *6 (holding that although Plaintiff was owed minimum wage and overtime compensation under the FLSA and NYLL he lacked Article III standing for his claims that Defendants failed to provide him with proper wage notices and statements because he "allege[d] only a technical statutory violation, and not a physical, monetary, or cognizable harm.").

The court in *Perez v. E.P.E. Enter. Corp*., No. 22-CV-6353, 2024 WL 1632255 (E.D.N.Y. Apr. 15, 2024), applied this reasoning in dismissing a nearly identical WTPA claim. There, the plaintiff alleged that he worked overtime hours without appropriate compensation and did not receive proper wage notices or statements. But the court found that:

> The injury that plaintiff suffered (*i.e.*, defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread-

14

> of-hours pay under other, express requirements of federal and state
> law. Without some tangible downstream harm flowing from those
> statutory violations, [p]laintiff has not shown that he suffered a
> concrete injury resulting from [d]efendants' violations of the
> NYLL's wage statement and wage notice requirements. Thus,
> [p]laintiff lacks Article III standing to pursue those claims against
> [defendant] in this [c]ourt.

*Id.* at *6 (quoting *Quieju*, 2023 WL 3073518, at *2).

So too here. Plaintiffs' Complaint offers only vague and conclusory allegations that Defendants did not pay them "at a rate of one and a half times their agreed upon rates of pay or the applicable minimum wage for any of their hours worked in excess of 40 hours in a workweek," and that they were paid an "'OT Blended' rate that varied depending on the amount of overtime hours worked, but always fell below the minimum wage." Compl. ¶¶ 36, 61, 69. The Complaint contains no individualized allegations as to how Defendants contributed to that alleged harm—nor does it plausibly link any harm to a failure to provide wage notices or statements. As *Perez* emphasizes, a plaintiff must identify "concrete, downstream consequences showing an interest in using the information from wage notices or wage statements separate and apart from bringing the current litigation." 2024 WL 1632255, at *7. Plaintiffs have not done so. Accordingly, Plaintiffs lack standing to pursue these claims under NYLL §§ 195(1)(a) and 195(3) and Counts V and VI should be dismissed.

### B. Plaintiffs' Wage Notice and Statement Claims are Belied by the Documentary Evidence

Even, assuming *arguendo*, the Court finds that the claims are properly pled, Plaintiffs' wage notice and statement claims are belied by the documentary evidence demonstrating that Plaintiffs did in fact receive proper notices and wage statements. Because the wage notices and statements are integral to Plaintiffs' claims that Defendants purportedly failed to provide these documents, the Court may consider such evidence in deciding the instant motion. *See Tulczynska*,

2019 WL 6330473, at *4 (holding that extrinsic evidence may be considered on a motion to dismiss when it is "'integral' to at least one claim in the pleading.").

Here, the documentary evidence unequivocally demonstrates that Plaintiffs were provided with proper wage notices. Section 146-2.2(a) of the Hospitality Industry Wage Order provides that:

> Prior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

*See* New York State Department of Labor, *Hospitality Industry Wage Order (Part 146)*, https://dol.ny.gov/system/files/documents/2024/12/cr146.pdf (last visited, Sept. 8, 2025). Plaintiffs concede as much in their Complaint. (*See* Compl. ¶ 47). Plaintiffs were provided with wage notices that contain the requisite information as outlined above. *See* Hannon Decl., Ex. B-E.

With respect to wage statements, Section 146-2.3 of the Hospitality Industry Wage Order provides:

> Statement to employee. Every employer shall provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages. The pay stub must list hours worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if any, deductions and net wages.

*See* New York State Department of Labor, *Hospitality Industry Wage Order (Part 146)*, https://dol.ny.gov/system/files/documents/2024/12/cr146.pdf (last visited, Sept. 8, 2025).

Plaintiffs were provided with wage statements that are sufficient.

Given that these documents unequivocally refute Plaintiffs' claims that they did not receive proper wage notices and statements, Counts V and VI must be dismissed. Alternatively, these claims are ripe for summary judgment.

### III.   UPON DISMISSAL OF PLAINTIFFS' FLSA CLAIMS, PLAINTIFFS' REMAINING STATE LAW CLAIMS MUST BE DISMISSED FOR LACK OF SUPPLEMENTAL JURISDICTION

Plaintiffs have only pled two causes of action under the FLSA—failure to pay overtime compensation and tip misappropriation (Counts I and VII). As demonstrated above, these claims—as well as Plaintiffs' NYLL claims—fail as a matter of law and should therefore be dismissed pursuant to FRCP 12(b)(6). Should the Court decide however that a portion or all of the NYLL claims are not subject to dismissal, the Court should decline to exercise supplemental jurisdiction over any remaining NYLL claims.

#### A.  Legal Standard

Pursuant to 28 U.S.C. § 1367, federal courts routinely decline to exercise supplemental jurisdiction over state law claims after dismissing federal claims. *Momin v. Quantierra Advisors LLC,* No. 21-CV-612 (JGK), 2022 WL 2002282, at *4 (S.D.N.Y. June 3, 2022). Under such circumstances, considerations of fairness, judicial economy, convenience, and comity weigh in favor of declination. *Id*. As discussed in *Momin*, not only does the balance of factors weigh in favor of dismissal, but, at this early stage of litigation, the concerns over such factors are of little consequence. *Id*. Accordingly, this Court should decline to exercise supplemental jurisdiction over any remaining state law claims.

### IV.   IN THE ALTERNATIVE, DEFENDANTS SEEK A MORE DEFINITE STATEMENT AS TO COUNTS I, III, VII AND VIII

If the Court denies Defendants' Motion to Dismiss the Complaint pursuant to FRCP 12(b)(6), in the alternative, Defendants seek a more definite statement with respect to Plaintiffs'

overtime claims (Counts I and III) and tip misappropriation claims (Counts VII and VIII) pursuant to FRCP 12(e). Where a pleading is sufficient to withstand Rule 12(b)(6) scrutiny but is also "so vague or ambiguous that the opposing party cannot respond to it," the movant may seek a more definite statement. *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 443 (S.D.N.Y. 2005).

As set forth above, Plaintiffs have not provided sufficient detail regarding what overtime rate they believe Plaintiffs should have received. Plaintiffs also fail to lay the foundation for their tip misappropriation claims by omitting any factual detail around the September 2024 underpayment allegations. Without the requisite details, Defendants can neither investigate nor respond to the claims. Therefore, Defendants seek a more definite statement as to the overtime and tip misappropriation claims.

## V.   ALTERNATIVELY, ARBITRATION MUST BE COMPELLED AS TO PLAINTIFF PARREIRAS AND PLAINTIFF JONES

In the event the Court declines to dismiss the Complaint in its entirety, it must compel arbitration as to Plaintiff Parreiras and Plaintiff Jones, both of whom executed valid arbitration agreements. *See* Hannon Decl., Ex. F-G.

### A.   Legal Standard

The Federal Arbitration Act ("FAA") provides a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983). The FAA also requires courts to "'direct parties to proceed to arbitration on issues to which an arbitration agreement has been signed.'" *Hernandez v. RNC Indus., LLC*, No. 21-CV-04518 (JS)(ST), 2024 WL 964932, at *2 (E.D.N.Y. Mar. 6, 2024) (quoting *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019)). Moreover, when a party to an arbitration agreement fails to comply with the agreement and proceeds with litigation, the adverse

18

party may compel arbitration. *Hernandez*, 2024 WL 964932 at *2. In deciding a motion to compel, courts assess "(1) whether the parties agreed to arbitrate; (2) the scope of the agreement; and (3) if statutory claims are asserted, whether Congress intended those claims to be non-arbitrable." *Id*. FLSA and NYLL claims are well-settled as arbitrable. *Id*. at *5.

Further, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. 1 at 24-25. Even where arbitration agreements include unenforceable terms, 'New York Courts generally honor "the state and federal policy favoring arbitration" by "sever[ing] the improper provision of the arbitration agreement, rather than void[ing] the entire agreement."' *Am. Fam. Life Assurance Co. of New York v. Baker*, 848 F. App'x 11, 13 (2d Cir. 2021). This policy favoring severability is further strengthened when the arbitration agreement includes a severability clause. *Id*. The presence of such a clause signifies '"severance was a contingency contemplated by the parties at the time of formation."' *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 346 (S.D.N.Y. 2010) (quoting *Booker v. Robert Half Int'l.*, 413 F.3d 77, 83 (D.C.Cir.2005)).

### B. Should the Court Decline to Dismiss Plaintiffs' Claims, the Court Must Compel Arbitration as to Plaintiff Parreiras and Plaintiff Jones

On April 24, 2024, Plaintiff Jones executed a valid and enforceable arbitration agreement and on April 25, 2025 Plaintiff Parreiras executed the identical arbitration agreement (the "Arbitration Agreements"). Both Arbitration Agreements govern the claims Plaintiffs assert in this action, as Section 1 provides the following:

> The Company and Employee (collectively, "Parties") mutually agree that any controversy or claim arising out of or relating to

> Employee's employment relationship with the Company, which could have been brought in a court of law ("Covered Disputes"), shall be settled by arbitration administered by the American Arbitration Association ("AAA") under its National Rules for the Resolution of Employment Disputes.

*See* Hannon Decl., Ex. F-G.

Additionally, the Arbitration Agreements waive Plaintiff Parreiras' and Plaintiff Jones' ability to assert class or collective action claims in any forum, as Section 4 provides the following:

> The Parties expressly intend and agree that: (a) class action and collective action procedures shall not be asserted, and will not apply, in any arbitration under this Agreement; (b) each will not assert class or collective action claims against the other in arbitration, court, or any other forum; (c) each shall only submit their own, individual claims in arbitration and shall not bring claims against the other in any representative capacity on behalf of any other individual; and (d) any claims by the Employee will not be joined, consolidated, or heard together with claims of any other current or former employee of Employer.

*Id.*

Accordingly, Plaintiff Parreiras' and Plaintiff Jones' individual and class and collective claims are barred before this Court. Moreover, to the extent Plaintiffs seek to challenge the validity of the Arbitration Agreements by arguing that certain provisions are ambiguous, federal courts, including the Second Circuit, will strike the ambiguous terms while preserving the remainder of the arbitration agreement. In line with Second Circuit guidance, any ambiguous term should be severed, not only based on the policy favoring arbitrability, but also based on the severability clause of Section 8 in the Arbitration Agreements:

> If any provision of this Agreement is adjudged to be void or otherwise unenforceable in whole or in part, such adjudication shall not affect the validity of the remainder of this Agreement.

*Id.*

Accordingly, this Court should compel arbitration pursuant to FRCP 12(b)(3) as to Plaintiff Jones and Plaintiff Parreiras.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court issue an Order granting the instant motion and dismissing Plaintiffs' Complaint in its entirety and with prejudice, and for such other and further relief as the Court may deem just and proper.


Dated: New York, NY
        September 12, 2025

*/s/ Brianne E. Murphy*
Brianne E. Murphy
Melissa L. Greenberg
Cynthia J. Park
Carli P. Miller
**HELBRAUN & LEVEY LLP**
40 Fulton St., 28th Floor
New York, NY 10038
Tel.: (212) 219-1193
*Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 11.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that this memorandum of law contains 6,150 words, excluding the caption, table of contents, table of authorities, and signature block, as counted by the word-processing system used to prepare this document.

/s/ Brianne E. Murphy
Brianne E. Murphy

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2025, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Brianne E. Murphy*
Brianne E. Murphy
