USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/14/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUKA MILOSAVLJEVIC, STEPHANIE JONES, and GUILHERME PARREIRAS, on behalf of themselves and others similarly situated,

Plaintiffs,

–against–

CASA CRUZ 61, LLC d/b/a CASA CRUZ, and JUAN SANTA CRUZ,

Defendants.

25 Civ. 3490 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Before the Court are (1) Plaintiffs' motion for leave to file their Proposed Second Amended Complaint (the "PSAC"), *see* ECF No. 43, PSAC, ECF No. 43-2; (2) Defendants' motion to compel the arbitration of claims asserted by Guilherme Parreiras and Stephanie Jones, *see* Mem. at 22–23, ECF No. 51; (3) Defendants' motion to dismiss Plaintiffs' First Amended Complaint ("FAC"), *see* FAC, ECF No. 42; Mem.[1]; and (4) Defendants' alternative motion for a more definite statement as to Counts I–IV of the FAC, *see* Mem. at 22. The Court grants Plaintiffs' motion for leave to amend, grants Defendants' motion to compel arbitration, grants in part and denies in part Defendants' motion to dismiss, and denies Defendants' motion for a more definitive statement.

**BACKGROUND**[2]

Defendants own and operate "Casa Cruz," a restaurant, lounge, and event space located in a six-story townhouse on the Upper East Side. FAC ¶ 1; PSAC ¶¶ 1, 31–32. Plaintiffs are former Casa Cruz servers. FAC ¶¶ 61, 76, 86; PSAC ¶¶ 71, 94, 113. Defendants paid Plaintiffs and other

[1] Although Defendants describe their motion as a motion to dismiss the FAC, *see* Mot., ECF No. 51, their brief in support of the motion addresses both the FAC and PSAC. *See, e.g.*, Mem. at 2.

[2] As required on a Rule 12(b)(6) motion to dismiss, the Court takes the well-pleaded facts alleged in the complaint as true and draws all reasonable inferences in favor of Plaintiffs, the non-moving party. *See Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In describing the background, the Court cites to both the FAC and PSAC.

similarly situated waitstaff as tipped employees, with base rates below the applicable minimum wage. FAC ¶ 36; PSAC ¶ 41. Individual Plaintiffs' allegations are set forth below.

Plaintiffs bring eight causes of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and New York Labor Law ("NYLL"), on behalf of themselves and others similarly situated. FAC ¶¶ 140–198; PSAC ¶¶ 176–234. On May 30, 2026, the Honorable Stewart D. Aaron conditionally certified a FLSA collective of "[a]ll non-exempt employees who worked for Defendants at Casa Cruz as a Server, Busser, Runner, Bartender or Barback at any time from April 8, 2023, to the present." ECF No. 89 at 13. Plaintiffs allege that Defendants violated state and federal wage-and-hour laws in multiple ways, most of which relate to a tip credit that Plaintiffs contend Defendants impermissibly claimed on their wages.[3]

Plaintiffs argue that Defendants were not entitled to take a tip credit because tipped employees, including Plaintiffs, spent more than twenty percent of their work time during shifts each workweek performing non-tipped side work. FAC ¶ 39; PSAC ¶ 44. These non-tipped duties included "clearing large dining rooms of all furniture for events, significant clean up *[sic]* and furniture resetting after the completion of events, sweeping, refilling and igniting fuel lamps, filling ice buckets, folding napkins, cleaning furniture, restocking and organizing plates, flatware and glassware, among other duties." FAC ¶ 40; PSAC ¶ 45.

In addition, the tips Plaintiffs and other waitstaff earned were subject to a tip-pooling policy, and Defendants retained some of the pooled tips without distributing them to waitstaff. FAC ¶ 41; PSAC ¶ 46. Under the tip-pooling policy, waitstaff, including Plaintiffs, gave cash tips they earned to Defendants. PSAC ¶ 48. Defendants then paid Plaintiffs and other waitstaff some earnings from tips, which were labeled on Plaintiffs' and other waitstaffs' wage statements as "Charge Tips." *Id.* ¶ 50.

---

[3] The amount below the federal minimum wage that employers may pay tipped employees under this provision is termed a "tip credit." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 239–40 (2d Cir. 2011).

But Defendants never physically distributed cash tips to Plaintiffs or waitstaff, *id.* ¶ 48, and Plaintiffs' wage statements never listed payment for cash tips, a category that commonly appears on wage statements for tipped hospitality workers, *id.* ¶ 50. In addition, after working events on September 10 and 14, 2024, certain waitstaff realized that they had not received their full tip earnings from Defendants. FAC ¶¶ 42–43; PSAC ¶¶ 52–53. When these waitstaff complained to Defendants, Defendants acknowledged they had failed to adequately compensate employees, including Plaintiffs, and promised the underpayment would appear in their next paycheck. FAC ¶ 44; PSAC ¶ 54. No future paychecks included the underpayment. FAC ¶ 45; PSAC ¶ 55.

Defendants also did not uniformly provide Plaintiffs with a statutorily compliant "Notice of Tip Credit" upon hire, FAC ¶ 50; PSAC ¶ 60; *see also* Opp. at 5–6, ECF No. 62; Hannon Decl., Ex. B, ECF No. 52-2, provided Plaintiffs with wage notices that inaccurately stated the applicable minimum wage and overtime rate, *see* Hannon Decl., Exs. B–D, ECF No. 52–2–4,[4] and never provided waitstaff, including Plaintiffs, with accurate statements of the wages they were paid. FAC ¶ 59, PSAC ¶ 69. Plaintiffs also allege that Defendants neither maintained records accurately recording the daily tips earned by their employees nor provided accurate tip records to waitstaff on request. FAC ¶ 46; PSAC ¶ 56.

Partly as a result of these practices, Plaintiffs additionally allege that Defendants failed to pay them overtime and compensated them below the state minimum wage. Defendants did not pay their employees at a rate of one and one-half times the greater of their agreed upon rates of pay or the applicable minimum wage for their hours worked in excess of forty hours in a workweek. FAC ¶ 37;

[4] The Court is entitled to consider facts alleged in the FAC and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *See, e.g., Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995). Because Plaintiffs allege that Defendants violated the FLSA by failing to provide statutorily compliant pay rate notices, *see* FAC ¶¶ 50, 54; PSAC ¶¶ 60, 64, the Court may consider the pay rate notices in Defendants' records as documents relied upon in the FAC and PSAC. *See Isayeva v. Diamond Braces*, No. 22 Civ. 4575, 2024 WL 1053349, at *15 (S.D.N.Y. Mar. 11, 2024) (dismissing plaintiff's NYLL wage notice claim because "[d]efendants' records indicate that she was provided with her wage notice").

PSAC ¶ 42. On at least one occasion, Defendants paid the same rate for regular and overtime hours. *See* FAC ¶ 64; PSAC ¶ 74. On other occasions, Defendants paid an overtime premium that was more than one and one-half times employees' base rate, but less than one and one-half times the minimum wage with no tip credit applied. FAC ¶ 67; PSAC ¶ 77. In other words, on those occasions, Defendants paid employees at rates below the minimum overtime rate based on an invalid tip credit. At all relevant times, Defendants also paid Plaintiffs a base rate below the state minimum wage in reliance on the tip credit.

I. Luka Milosavljevic

Milosavljevic worked at Casa Cruz as a server, generally working between 35–43 hours per week, from about October 17, 2022, through October 20, 2024. FAC ¶¶ 61, 63; PSAC ¶¶ 71, 73. Throughout his employment, Milosavljevic engaged in more than twenty percent of his working time performing non-tipped activities such as "preparing event space for events, breaking down event spaces, cleaning, refilling and igniting fuel lamps, folding napkins, restocking glassware and flatware, and organizing furniture, among other duties." FAC ¶ 62; PSAC ¶ 72.

Through December 31, 2023, Defendants paid Milosavljevic $10 per hour, regardless of whether he worked a regular hour or an overtime hour. FAC ¶ 64; PSAC ¶ 74. For example, Milosavljevic worked 51.23 hours the week of May 8, 2023. FAC ¶ 65; PSAC ¶ 75. For that work, he received a flat rate of $10 per hour for both his first 40 hours of work and his next 11.23 hours of work. FAC ¶¶ 65–66; PSAC ¶¶ 75–76.

A pay notice form dated December 15, 2023, and signed by Milosavljevic, indicated that Defendants were claiming a $5 tip credit on his wages. *See* Hannon Decl., Ex. A, ECF No. 52-1.[5] This notice did not, however, contain language informing Milosavljevic that Defendants were

[5] Under the NYLL, employers must provide non-exempt employees with written notices explaining their rates of pay and other required information. *See* NYLL § 195.

required to make up the difference between his base rate plus tips earned and the minimum wage. *See id.*

Beginning January 1, 2024, and continuing through his last day of work, Defendants paid Milosavljevic $10.65 per regular hour worked and a variable "OT Blended" rate that varied but always fell below the minimum wage. FAC ¶ 67; PSAC ¶ 77. A second pay notice form dated January 15, 2024, featured Milosavljevic's signature and contained language informing him he was entitled to be paid the difference between his base rate plus tips earned and the minimum wage. *See* Hannon Decl., Ex. B. This form, however, incorrectly stated that that the minimum wage was $15.00 and the overtime rate was $22.50. *Id.* The sections for "Employee's rate of pay" and "Overtime Pay Rate" provided the minimum wage but did not identify those rates as the statutory minimum. *Id.*

On the week of April 1, 2024, Milosavljevic worked approximately 40.83 hours. FAC ¶ 68; PSAC ¶ 78. Defendants paid Milosavljevic $10.65 for the first 39.79 hours he worked, and $16.00 per hour for next 3.04 hours. FAC ¶ 69; PSAC ¶ 79. On the week of April 8, 2024, during which Milosavljevic worked approximately 41.29 hours, Defendants paid Milosavljevic $10.65 for his first 39.15 hours worked and $16.00 per hour for the additional 2.14 hours. FAC ¶¶ 70–71; PSAC ¶¶ 80–81.

Defendants paid Milosavljevic some tip earnings. *See* PSAC ¶ 85. But they never distributed cash tips to Milosavljevic, *id.* ¶ 83, and none of Milosavljevic's wage statements included his cash tips, *id.* ¶ 86. On February 16, 2023, Milosavljevic collected $166.28 in cash tips while working as a server for Defendants, which did not appear in his next paycheck on February 24, 2023. *Id.* ¶¶ 84–85. That paycheck did, however, include $989.65 in "Charge Tips." *Id.* ¶ 85. Milosavljevic also worked a September 10, 2024, event for which Defendants acknowledged failing to pay employees their full tip earnings. FSAC ¶¶ 42–43; PSAC ¶¶ 52–53, 87–88. Defendants never paid

Milosavljevic the missing tips that they promised would appear in his next paycheck. PSAC ¶¶ 88–89.

II. Stephanie Jones

Jones was employed at Casa Cruz as a server, generally working between 25–41 hours per week, from about April 29, 2024, through December 29, 2024. FAC ¶¶ 76, 78; PSAC ¶¶ 94, 96. Throughout her employment, Jones engaged in more than twenty percent of her working time performing non-tipped activities such as "preparing event space for events, breaking down event spaces, cleaning, refilling and igniting fuel lamps, folding napkins, restocking glassware and flatware, and organizing furniture, among other duties." FAC ¶ 77; PSAC ¶ 95.

On April 24, 2024, Jones signed an arbitration agreement stating that "any controversy or claim arising out of or relating to [her] employment relationship with [Casa Cruz], which could have been brought in a court of law . . . shall be settled by arbitration." Hannon Decl., Ex. E, ECF No. 52-5. The next day, around the date when Jones was hired, she signed a pay notice form. FAC ¶ 76; PSAC ¶ 94; Hannon Decl., Ex. C, ECF No. 52-3. This form contained language informing Jones that Defendants were claiming a $5.35 tip credit on her wages and that they were required to make up the difference between her base rate plus tips earned and the minimum wage. *See* Hannon Decl., Ex. C. However, the form incorrectly stated that that the minimum wage was $15.00 and the overtime rate was $22.50. *Id.* The sections for "Employee's rate of pay" and "Overtime Pay Rate" provided the minimum wage but did not identify those rates as the statutory minimum. *Id.*

Defendants paid Jones $10.65 per regular hour worked and a variable "OT Blended" rate that always fell below the minimum wage. FAC ¶ 79; PSAC ¶ 97. For example, on the week of June 3, 2024, Jones worked 40.78 hours. FAC ¶ 80; PSAC ¶ 98. Defendants paid Jones $10.65 for the first 34.94 hours she worked and $16.00 per hour for 5.84 additional hours. FAC ¶ 80; PSAC ¶ 99.

Defendants paid Jones some tip earnings. *See* PSAC ¶ 103. But, as with Milosavljevic, they never distributed cash tips to Jones, *id.* ¶ 101, and none of Jones' wage statements included cash tips, *id.* ¶ 104. On October 2, 2024, Jones collected $300 in cash tips while working as a server for Defendants, which did not appear in her next paycheck dated October 11, 2024. *Id.* ¶¶ 102–03. That paycheck did, however, include $1,091.33 in "Charge Tips." *Id.* ¶ 103. Jones also worked the September 14, 2024 event for which Defendants acknowledged failing to pay employees their full tip earnings. FAC ¶¶ 42–43; PSAC ¶¶ 52–53, 105–08. Defendants never paid Jones the missing tips that they promised would appear in her next paycheck. PSAC ¶ 108.

III. <u>Guilherme Parreiras</u>

Parreiras was employed at Casa Cruz as a server, generally working between 30–40 hours per week, from about May 10, 2024, through January 5, 2025. FAC ¶¶ 86, 88; PSAC ¶¶ 113, 115. Throughout his employment, Parreiras engaged in more than twenty percent of his working time performing non-tipped activities such as "preparing event space for events, breaking down event spaces, cleaning, refilling and igniting fuel lamps, folding napkins, restocking glassware and flatware, and organizing furniture, among other duties." FAC ¶ 87; PSAC ¶ 114.

On April 25, 2024, Parreiras signed an arbitration agreement identical to the one signed by Jones. *See* Hannon Decl., Ex. F, ECF No. 52-6. On the same date, he signed a pay notice form. *See* Hannon Decl., Ex. D, ECF No. 36-5. This form stated that Defendants were claiming a $5.35 tip credit on Parreiras' wages. *See id*. The form contained language informing Parreiras that Defendants were required to make up the difference between his base rate plus tips earned and the minimum wage, but it incorrectly stated that that the minimum wage was $15.00 and the overtime rate was $22.50. *Id.* The sections for "Employee's rate of pay" and "Overtime Pay Rate" provided the minimum wage but did not identify those rates as the statutory minimum. *Id.*

Defendants paid Parreiras $10.65 per regular hour worked. FAC ¶ 88; PSAC ¶ 116. He does not allege that he worked overtime. Defendants paid Parreiras some tip earnings. *See* PSAC ¶ 120. But Defendants never distributed cash tips to Parreiras, PSAC ¶ 118, and none of Parreiras' wage statements included cash tips. *Id.* ¶ 121. On July 25, 2024, Parreiras collected $275 in cash tips while working as a server for Defendants, which did not appear in his next paycheck on August 2, 2024. *Id.* ¶¶ 119–20. That paycheck did, however, include $648.36 in "Charge Tips." *Id.* ¶ 120. Parreiras also worked the September 10, 2024, event for which Defendants acknowledged failing to pay employees their full tip earnings. FAC ¶¶ 42–43; PSAC ¶¶ 52–53, 122–24. Defendants never paid Parreiras the missing tips that they promised would appear in his next paycheck. PSAC ¶ 125.

## ANALYSIS

### I. Motion for Leave to File Amended Complaint

#### A. Legal Standard

A motion to amend the pleadings is generally governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Oneida Indian Nation of New York v. City of Sherill*, 337 F.3d 139, 168 (2d Cir. 2003), *rev'd on other grounds*, 544 U.S. 197 (2005). Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend," *John Hancock Mutual Life Insurance Co. v. Amerford International Corp.*, 22 F.3d 458, 462 (2d Cir. 1994), and for the proper reasons, a court may deny permission to amend, *see Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir.1998). In discussing the exercise of this discretion, the Supreme Court has stated that "the leave sought should . . . be 'freely given'" absent reasons such as undue delay, bad faith, futility, repeated failure to cure deficiencies, or undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)).

However, "if the motion [to amend] is filed after the deadline imposed by the district court in its scheduling order," the plaintiff must also show "good cause" for seeking leave to amend the complaint. *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) (citing *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 339 (2d Cir. 2000), and Fed. R. Civ. P. 16(b)(4)); *see also Wheeler v. Citibank*, No. 11 Civ. 4721, 2012 WL 1995148, at *5 (S.D.N.Y. June 1, 2012) ("After the moving party demonstrates [good cause] under Rule 16, the Rule 15 standard applies to determine whether the amendment is proper.").

A motion for leave to amend governed by Rule 16(b) is within the district court's discretion. *See Kassner v. 2nd Avenue Delicatessen Inc*., 496 F.3d 229, 243–244 (2d. Cir. 2007). The diligence of the moving party is the "primary consideration" under Rule 16(b), but "it is not . . . the only consideration." *Id.* "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading . . . will prejudice defendants." *Id*. The party moving to amend bears the burden of providing "a satisfactory explanation" for any delay. *Baez v. Delta Airlines, Inc*., No. 12 Civ. 3672, 2013 WL 5272935, at *5 (S.D.N.Y. Sept. 18, 2013).

B. Discussion

Plaintiffs' request for leave to file the PSAC postdates the deadline in the scheduling order. *See* ECF No. 43 (letter motion dated October 27, 2025); ECF No. 18 (scheduling order dated July 1, 2025, requiring motions for leave to amend the pleadings within 30 days). As such, Rule 16(b)'s "good cause" standard governs Plaintiffs' motion. *See Werking*, 526 F. App'x at 96. The Court determines in its discretion that good cause exists to grant Plaintiffs' motion.

Plaintiffs seek to demonstrate diligence by explaining that, through ongoing discovery, they have uncovered new information supporting their claims, including "[a]mounts of cash tips . . . found in Defendants' production of Plaintiffs' time records" and the fact that "Plaintiffs' wage statements

did not reflect the payment of any cash tips." ECF No. 43 at 2; *see Port Auth. Police Benevolent Ass'n v. Port Auth. of New York & New Jersey*, No. 15 Civ. 3526, 2016 WL 6083956, at *5 (S.D.N.Y. Oct. 17, 2026) ("[I]f a party learns new facts through discovery that were unavailable prior to the applicable deadline and moves promptly to [amend its allegations] based on such facts, leave to amend is appropriate."). Defendants point out that Plaintiffs' wage statements "have been in [their] possession even prior to the commencement of this litigation," ECF No. 44 at 3, and argue that Plaintiffs lacked diligence because they failed to include in prior pleadings information they "knew[] or should have known." *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (citation omitted). But the PSAC amendments also rely on "amounts of cash tips" located in time records received from Defendants. *See, e.g.*, PSAC ¶¶ 84, 119, 102; ECF No. 43 at 2. These records were produced after the deadline to move for leave to amend in the scheduling order, *see* ECF No. 43 at 1, and an approximately two-month gap between obtaining information and seeking leave to amend generally suffices to demonstrate diligence under Rule 16(b). *See AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 327 n.14 (S.D.N.Y. 2024) (collecting cases).

In addition, Defendants will not be prejudiced by Plaintiffs' filing of the PSAC. *See Kassner*, 496 F.3d at 244. The PSAC adds allegations that (1) Defendants failed to pay Plaintiffs' full tip earnings on specific dates, and (2) that Plaintiffs' wage statements did not contain a category for cash tips. *See generally* PSAC. These allegations support Plaintiffs' tip misappropriation claims. Defendants do not argue that Plaintiffs' tip misappropriation claims in the FAC are insufficiently supported by factual allegations. *See generally* Mem.; *see also id.* at 10 (arguing that Counts I–IV, but not VII and VIII, fail for lack of plausible allegations). Instead, Defendants argue that Plaintiffs' federal tip misappropriation claim is not actionable and that the state tip misappropriation claim should be dismissed for lack of subject matter jurisdiction. *See id.* at 13–14, 20–21. Permitting

Plaintiffs to strengthen the factual basis for their claims does not undermine these arguments. Defendants also had a full opportunity to address the PSAC's allegations in briefing their motion to dismiss. *See* Mem. at 2 ("Both the FAC and PSAC fail to state a viable claim . . . ."); Reply at 4 (disputing whether Plaintiffs' wage statements accounted for cash tips).

In light of new information obtained from Defendants' records during discovery and the lack of prejudice to Defendants, good cause exists to permit Plaintiffs to file the PSAC. Accordingly, the Court will treat the PSAC as the operative complaint in this action.

II. Motion to Compel Arbitration

A. Legal Standard

The Federal Arbitration Act ("FAA") "mandates that arbitration agreements subject to that statute 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 298 (E.D.N.Y. 2018) (quoting 9 U.S.C. § 2). The FAA "reflects a 'liberal federal policy favoring arbitration agreements' and 'requires courts to enforce agreements to arbitrate according to their terms.'" *Id.* (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)). Even so, courts may "invalidate agreements that prevent the effective vindication of a federal statutory right." *Sutherland v. Ernst & Young*, 726 F.3d 290, 298 (2d Cir. 2013) (internal quotation marks and citation omitted). The effective vindication exception applies where an agreement operates as a "prospective waiver of a party's right to pursue statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (emphasis omitted).

The "appropriate remedy" when a provision of an arbitration agreement "would actually preclude a plaintiff from pursuing her statutory rights [] is to sever the improper provision of the arbitration agreement, rather than void the entire agreement." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124 (2d Cir. 2010) (internal quotation marks and citation omitted). In keeping

with this rule, courts faced with arbitration agreements containing similar provisions to the ones at issue here have severed them, not refused to compel arbitration. *See Castellanos*, 291 F. Supp. 3d at 302.

B. Discussion

Jones and Parreiras both signed arbitration agreements governing "any controversy or claim," apart from certain exclusions not applicable here, "arising out of or relating to [their] employment relationship with the [Casa Cruz]." *See* ECF Nos. 52-5 (Jones), 52-6 (Parreiras). Plaintiffs argue that the arbitration agreements are unenforceable. But the provisions Plaintiffs rely on are all either permissible or severable.

Plaintiffs' objections to the class and collective action waiver and sexual harassment exclusion, *see* Opp. at 15–16, 18–19, lack merit. Binding Second Circuit precedent holds that "the FLSA does not preclude the waiver of collective action claims." *Sutherland*, 726 F.3d at 296. And, as Plaintiffs acknowledge, the Ending Forced Arbitration Act ("EFAA"), 9 U.S.C. § 401, *et seq.*, mandates the exclusion of sexual harassment claims from predispute arbitration agreements. The Court rejects Plaintiffs' argument that such an exclusion renders the at-issue arbitration agreements unenforceable.

Plaintiffs also mention a sexual harassment settlement by Defendants in a separate litigation involving a similarly-situated employee. *See* Opp. at 16. This is not relevant to the enforceability of the arbitration agreement in this case.

The cost-sharing provision is also permissible but only because it limits employees' fees and costs to "the amount of the court costs which the [e]mployee would be required to pay if the dispute were decided in a court of law." ECF No. 52–6 at 3. Cost-sharing provisions in arbitration agreements may be unenforceable if they saddle employees with costs so prohibitive that the provisions prevent vindication of their statutory rights to pursue their claims. *See Green Tree Fin.*

*Corp.–Alabama v. Randolph*, 531 U.S. 79, 90–91 (2000). Following this logic, courts in this Circuit have found cost sharing provisions unenforceable when they would make a plaintiff "responsible for significant arbitration costs, which she would not incur in a judicial forum." *Ball v. SFX Broad., Inc.*, 165 F. Supp. 2d 230, 240 (N.D.N.Y. 2001); *accord Crespo v. Kapnisis*, No. 21 Civ. 6963, 2022 WL 2916033, at *6 (E.D.N.Y. July 25, 2022). Because the arbitration agreement expressly limits Plaintiffs' financial obligations during arbitration to the same costs they would incur in the judicial forum, the agreement does not prevent the vindication of Plaintiffs' statutory rights any more than the burden of litigation.

Plaintiffs are correct, however, that the one-year limitations period imposed by the arbitration agreement impermissibly prevents the effective vindication of their statutory rights under the FLSA. *See* Opp. at 17. "[F]ederal courts have routinely concluded that arbitration provisions shortening the limitations period to bring FLSA claims are unenforceable." *Castellanos*, 291 F. Supp. 3d at 300 (collecting cases). Because "a plaintiff's substantive right to full compensation is determined by the [FLSA's] statute of limitations," enforcing a shorter limitations period deprives a plaintiff of her "substantive right to full compensation under the FLSA," which may not be bargained away. *Pruiett v. West End Restaurants, LLC*, No. 11 Civ. 747, 2011 WL 5520969, at *5 (M.D. Tenn. Nov. 14, 2011); *accord Castellanos*, 291 F. Supp. 3d at 299–301.

As such, the Court severs the one-year limitations period in Paragraph 5 of the arbitration agreement. *See* ECF Nos. 52-5 at 2, 52-6 at 2. The rest of the arbitration agreement remains in force. Jones and Parreiras are compelled to arbitrate their claims, which shall be stayed pending the outcome of arbitration. *See Fadlelseed v. ABM Aviation JFK*, 751 F. Supp. 3d 207, 217 (E.D.N.Y. 2024) ("[C]ourts in this Circuit generally should stay the proceedings pending arbitration, rather than dismiss the case.").

III. Motion To Dismiss Under Fed. R. Civ. P. 12(b)(6)

The Court turns to the question of whether the claims brought by the remaining Plaintiff, Luka Milosavljevic,[6] fail as a matter of law.[7] Defendants' briefing addresses both the FAC and the PSAC, and because the PSAC is now the operative pleading in this action, the Court analyzes Defendants' motion as applied to the PSAC.

A. Legal Standard

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id*. On a motion to dismiss, the Court must draw all reasonable inferences in the non–movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[6] Because the other named Plaintiffs must arbitrate their claims, the Court refers to Milosavljevic as "Plaintiff" throughout the motion to dismiss analysis.

[7] Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). *See generally* Mem. Defendants also argue that Milosavljevic's state law claims should be dismissed under Rule 12(b)(1) if their 12(b)(6) motion is granted as to Milosavljevic's federal claims. *Id.* at 7. Because the Court declines to dismiss Plaintiff's federal claims, the Court considers only Defendants' motion under Rule 12(b)(6).

B. Discussion

1. FLSA Overtime Claim (Count I)

The FLSA requires employers to pay overtime wages "equal to one and one-half an employee's regular salary for every hour worked in excess of forty hours in any given week." *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 292 (E.D.N.Y. 2024) (citing 29 U.S.C. § 207(a)). "To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient details about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 & n.10 (2d Cir. 2013).

Plaintiff satisfies this standard by alleging that he worked exactly 51.23 hours during the week of May 8, 2023, and received the same rate of pay for both regular and overtime hours. FAC ¶¶ 65–67; PSAC ¶¶ 74–77. An overtime rate equal to the employee's regular rate is inadequate under the FLSA, which requires Defendants to pay Plaintiff one and one-half times his hourly rate, even if it was above the federal minimum wage. *See Xin Long Lin v. New Fresca Tortillas, Inc*., No. 18 Civ. 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019).

Additional considerations apply when calculating the overtime rate for tipped employees under the FLSA. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 291 (S.D.N.Y. 2011). The FLSA permits employers to pay their employees below the minimum wage as long as the employees earn a certain amount in tips. *See* 29 U.S.C. § 203(m)(2)(A). The amount below the federal minimum wage that employers may pay tipped employees under this provision is termed a "tip credit." *See, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 239–40 (2d Cir. 2011).

The parties debate at length whether Defendants were eligible to claim a tip credit under the FLSA, and Defendants suggest that the issue is dispositive of Plaintiff's overtime claims. *See* Opp. at 4. But when an employer pays employees above the federal minimum wage, the employer has "not relie[d] on a tip credit." *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 561 (S.D.N.Y. 2013). Plaintiff alleges facts showing that Defendants paid him above the federal minimum wage. PSAC ¶¶ 74, 77. As such, Defendants did not take a tip credit for the purposes of the FLSA. Even so, Defendants were required to pay Plaintiff the overtime premium required by FLSA, and Plaintiff has plausibly alleged that they did not do so.

2. NYLL Wage Claims (Counts II–IV)

Plaintiff alleges three wage violations under the NYLL: failure to pay minimum wage (second cause of action), failure to pay overtime wages (third cause of action), and failure to pay all wages owed (fourth cause of action). PSAC at 21–23. These violations primarily arise from what Plaintiff argues is an invalid application of a tip credit under the NYLL. *See id.* ¶¶ 6–7. Plaintiff plausibly alleges that Defendants' NYLL tip credit was invalid.

Like the FLSA, the NYLL permits employers to pay employees below state minimum wage and make up the difference with tips. *Cao*, 727 F. Supp. 3d at 292 (E.D.N.Y. 2024) (citing 29 U.S.C. § 207(a); NYLL § 651; 12 N.Y.C.R.R § 142-2.2). But employers may only do so if they comply with a number of statutory limits.

First, under New York law, employers may claim a tip credit only if they have provided notice to the employee that the tip credit will be deducted from the employee's wages. *See Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 254 (S.D.N.Y. 2021). A tip credit claimed without notice to the employee is invalid and may give rise to liability for failure to pay minimum wage. *Id.* at 256; *see also Lorenzo v. Dee Mark Inc.,* 23 Civ. 48, 2026 WL 494070, at *4 (S.D.N.Y. Feb. 23, 2026).

Second, employers and their agents may not retain tips earned by their employees and claimed for the purposes of a tip credit under the NYLL. *See Shahriar*, 659 F.3d at 240; NYLL § 196-d.

Third, New York regulations provide that "[o]n any day that a service employee or food service worker works at a non-tipped occupation . . . for more than 20 percent of his or her shift . . . the wages of the employee shall be subject to no tip credit for that day." 12 N.Y.C.R.R. § 146-2.9. This regulation requires payment of the full minimum wage "on any day that the relevant employee engages in non-tipped side work"—including "stocking food and other materials, cleaning, and preparing food or drinks"—in excess of the regulatory maximum. *Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468, 499 (S.D.N.Y. 2024). This provision ensures "that employees who are paid through tips have the opportunity to earn tips." *Id.* Defendants mischaracterize this rule by highlighting the U.S Department of Labor's repeal of a 2021 regulation imposing a similar twenty percent limit on non-tipped work (among other requirements) and then seeking to equate the NYLL standard with the federal one. *See* Opp. at 5–9. But whatever its implications for FLSA claims, the repeal of the federal rule has no bearing on the analysis of excessive side work claims under a New York regulation that remains in force. *See* 12 N.Y.C.R.R. § 146-2.9.

Plaintiff offers multiple theories for why Defendants' tip credit under the NYLL was improper. He alleges that Defendants "did not properly provide [him] with an accurate Notice of Tip Credit compliant with the strict requirements of the NYLL prior to application of the tip credit." PSAC ¶ 91. Defendants acknowledge that Plaintiff did not receive a compliant notice of tip credit until January 15, 2024, approximately thirteen months after his date of hire. *See* Reply at 4; Opp. at 12. Any tip credit claimed on Plaintiff's wages prior to January 15, 2024, was therefore invalid as a matter of law. *See Chichinadze*, 517 F. Supp. 3d. at 257. The parties dispute whether errors in the January 15, 2024 notice were sufficient to render any subsequent tip credit invalid for lack of notice as well. *See* Opp. at 12; Reply at 3. The Court need not decide that issue because Plaintiff has

plausibly alleged that the tip credit was invalid on his excessive side work theory, which the Court addresses next.

Plaintiff alleges that Defendants claimed a tip credit on employees' wages, even when employees worked for more than twenty percent of their shifts on "non-tipped side work." *Managhas*, 754 F. Supp. 3d at 499. Plaintiff alleges that Defendants required employees to engage in non-tipped event preparation and clean-up for "far exceeding twenty percent . . . of the total hours worked during a given shift each workweek." PSAC ¶¶ 44–45. Plaintiff spent more than twenty percent of his working time on tasks such as "preparing event space for events, breaking down event spaces, cleaning, refilling and igniting fuel lamps, folding napkins, restocking glassware and flatware, and organizing furniture." *Id.* ¶ 72. These duties are not materially different from the non-tipped, non-customer facing duties including "cleaning furniture," "putting . . . napkins, glasses, and plates on tables," and "setting up the outdoor dining space" that justified invalidating a tip credit in *Mangahas*, 754 F. Supp. 3d at 499. Therefore, Defendants' argument that employees' side work was permissible because it was related to their tipped occupation fails. *See* Mem. at 7–8.

Defendants also contend that Plaintiff does not state a claim under an excessive side work theory because he does not allege "when, how often, or for how long" staff performed these tasks. Mem. at 10. This mischaracterizes the allegations. Plaintiff alleges that staff engaged in excessive side work "each workweek." PSAC ¶ 44. Estimating the time spent on non-tipped work as a percentage of a total shift is a reasonable method of approximating how long staff spent on such duties. *See Adonias v. Al Horno Lean Mexican Kitchen Inc.*, No. 16 Civ. 7266, 2018 WL 4007643, at *2 (S.D.N.Y. Aug. 22, 2018) (describing employee testimony on the percentage of each shift spent on non-tipped duties). Additionally, Plaintiff details the type of duties performed, which provides further factual context from which the Court can evaluate the plausibility of his claims. *See id.* at *3 (considering how long it would take plaintiffs to perform certain non-tipped tasks). For example, he

states that staff performed self-evidently time-consuming tasks such as "clearing large dining rooms of all furniture for events," PSAC ¶ 45, which helps "nudge [his] claims across the line from conceivable to plausible." *Twombly*, 550 at 570 (2007).

In light of Plaintiff's showing that Defendants claimed an invalid tip credit, he states a claim for the specified NYLL wage violations. Plaintiff states a claim for NYLL minimum wage violations by alleging the below-minimum wage rates that he was paid from the start of his employment through his end date. *See* PSAC ¶¶ 74, 77 (alleging that Plaintiff was paid $10 per regular hour until December 23, 2023, and $10.65 per regular hour from January 1, 2024, through the end of his employment). He states a claim for NYLL overtime violations because he describes specific weeks during which he worked over forty hours but was paid less than one and one-half times the minimum wage for hours worked over forty. *See* PSAC ¶¶ 74, 75–76, 78–79; *see also Nakahata*, 723 F.3d at 201 & n.10. (in FLSA context, plaintiffs state a claim for overtime violations by alleging "sufficient details . . . to support a reasonable inference that [the plaintiff] worked more than forty hours in a given week."); NYCRR § 142-2.2 (state overtime requirement). Insofar as Plaintiff's claim that Defendants have failed to pay him all wages owed is coextensive with the foregoing causes of action, he has also stated a claim for failure to pay all wages owed. *See* NYLL § 198(3) (providing "[a]ll employees . . . the right to recover full wages" withheld in violation of the NYLL).[8]

3. NYLL Wage Notice and Statement Violations (Counts V–VI)

Counts V and VI fail because Plaintiff has not demonstrated a concrete injury. Article III of the U.S. Constitution provides that federal courts may only hear cases and controversies. *In re*

[8] Non-exempt employees typically sue under the NYLL for failure to pay all wages owed when an employer promises a pay rate above the minimum wage, then fails to pay that employee the promised rate. *See Cavalotti v. Daddyo's BBQ, Inc.*, No. 15 Civ. 6469, 2018 WL 5456654, at *13 (E.D.N.Y. Sep. 8, 2018) (collecting cases). That is not the case here, where Plaintiff's agreed-upon rate was below the minimum wage. *See* PSAC ¶¶ 74–77. Plaintiff's fourth cause of action, therefore, does not entitle him to any additional relief beyond his second and third cause of action. *See* NYLL § 198(3) (permitting employees to recover only up to the "full wages" to which they are entitled under the NYLL). Nonetheless, Plaintiff is correct that he was owed the minimum wage and overtime wages under NYLL § 652 and 12 N.Y.C.R.R. § 142-2.2, and Defendants failed to pay him such wages.

*Auction Houses Antitrust Litig.*, 42 F. App'x 511, 514 (2d Cir. 2002); U.S. Const. Art. III, § 2. This provision requires plaintiffs to show that they have suffered "a concrete injury" to sue in federal court, "even in the context of a statutory violation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (citation omitted). The Second Circuit has held that, in the context of violations of NYLL wage notice provisions, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm" to demonstrate Article III standing. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024). For example, they must plausibly allege that they "would have undertaken . . . advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided." *Id.* They "cannot assume" that noncompliant wage statements would have prevented underpayment "without analysis" or rely on "speculation and conjecture" to meet this standard. *Id.* at 309.

Plaintiff's fifth and sixth causes of action allege that Defendants violated the NYLL provisions that require employers to provide their staff with certain notices regarding their pay rate upon hiring and accurate wage statements throughout their employment. *See* PSAC at 25–26. Plaintiff alleges that, as a result of Defendants' statutory violations, employees "suffered concrete harm" because they were "prevented from . . . (i) realizing their true hours worked, (ii) realizing that they were underpaid; and (iii) taking appropriate action to obtain the payments due to them." *Id.* ¶¶ 215–26, 224–25. But Plaintiff has alleged no facts to support these assertions. Such facts might include, for example, when Plaintiff and other employees lacked knowledge of their underpayment, how they learned of their underpayment, and what actions they took upon discovering their underpayment. Because Plaintiff has not met the standard outlined in *Guthrie*, Plaintiff's fifth and sixth cause of action are dismissed, without prejudice.

4. FLSA and NYLL Misappropriation of Tips (Counts VI–VIII)

The FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). Similarly, under the NYLL,"[n]o employer or his agent . . . shall . . . retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196-d.

Plaintiff alleges that Defendants "implemented an invalid tip pooling scheme whereby Defendants unlawfully retained tips that were meant for [w]aitstaff." PSAC ¶ 46. Plaintiff specifically alleges that staff were not paid full tip earnings for events on September 10 and 14 and that Defendants acknowledged underpaying staff for working these events. *Id.* ¶¶ 51–55. The PSAC adds allegations further explaining the tip-pooling system: tipped employees are required to "turn in all cash tips," *id.* ¶ 37, which Defendants then consolidate into "one large tip pool," *id.* at ¶ 35. Staff do not receive cash distributions from this pool, and cash tips are not listed on their paychecks, but they do receive earnings labeled on their paychecks as "Charge Tips." *Id.* ¶¶ 49–60. The PSAC also states that Plaintiff worked during the September 10 event and that, despite Defendants' promise to make up the missing tip earnings in Plaintiff's next paycheck, he never received compensation for this underpayment. *See id.* ¶¶ 87–89.

Defendants challenge Plaintiff's tip misappropriation claims on two bases. First, Defendants argue that Plaintiff cannot state a claim for misappropriation of tips under FLSA because he was paid above the federal minimum wage. *See* Opp. at 13–15; Reply at 4. Not so. "In 2018, Congress amended the FLSA" to specifically "create a cause of action against employers for unlawful retention of tips," even if employees are paid above the minimum wage and employers do not take a tip credit. *Van Duser v. Tozzer Ltd.*, No. 23 Civ. 9329, 2024 WL 4635495, at *1 (S.D.N.Y. Oct. 31, 2024).

Because § 203(m)(2)(B) expressly provides that it applies "regardless of whether or not the employer takes a tip credit," the Court declines to dismiss Plaintiffs' FLSA tip misappropriation claims on this basis at the pleading stage.

Second, Defendants argue that, in the PSAC, Plaintiff misconstrues the "Charge Tips" category on his paycheck, and "Charge Tips" actually refers to both cash and credit card tips paid to employees. *See* Reply at 4; Hannon Decl. ¶ 11, ECF No. 52. This assertion raises a factual issue, which cannot be addressed at the motion to dismiss stage. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558–59 (2d Cir. 2016) ("A motion brought under Rule 12(b)(6) challenges only the legal feasibility of a complaint. The test of a claim's substantive merits is reserved for the summary judgment procedure." (internal quotation marks and citation omitted)). Furthermore, even if considered and accepted as true, Defendants' explanation of the "Charge Tips" category has no bearing on Plaintiff's allegations that waitstaff noticed, and Defendants acknowledged, underpayment of tip earnings on certain dates. *See* PSAC ¶¶ 52–53, 87–88.

As such, the Court denies Defendants' motion to dismiss Plaintiff's tip misappropriation claims under the FLSA and NYLL.

## IV. Motion for a More Definite Statement

### A. Legal Standard

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Where a defendant cannot reasonably respond to a complaint because of the latter's vagueness or ambiguity, a court may grant the defendant's motion for [a] more definite statement" under Federal Rule of Civil Procedure 12(e). *Clayton v. City of Middletown*, 237 F.R.D. 538, 539 (D. Conn. 2006). Such motions are "generally disfavored," however, "because of their dilatory effect." *ProBatter Sports, LLC v. Sports Tutor, Inc.*, 246 F.R.D. 99, 101 (D. Conn. 2007) (citation omitted). "Rule 12(e) is designed to remedy unintelligible

pleadings, not merely to correct for lack of detail." *Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 443 (S.D.N.Y. 2005). So long as the complaint complies with Federal Rule of Civil Procedure 8(a), motions for a more definite statement should generally not be granted. *ProBatter Sports*, 246 F.R.D at 101. Instead, "[t]he preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings . . . Rule 12(e) is meant to rectify incomprehensible or confused pleadings, not to add detail or substitute for the discovery process." *Id.* (citations omitted).

B. Discussion

Defendants argue that a more definite statement is warranted as to Counts I–IV because "Plaintiffs have failed to allege essential facts," including "the minimum wage and overtime rates they contend should have applied" and "the manner in which any alleged shortfall occurred." Mem. at 22. Defendants request an order directing Plaintiffs to specify "the wages allegedly owed, the periods at issue, and the calculations underlying their asserted damages." *Id.*

Defendants seek detail that is appropriately obtained via discovery. Neither the FAC nor PSAC is "incomprehensible or confused," *ProBatter Sports*, 246 F.R.D at 101. Courts grant 12(e) motions only based on unintelligible pleadings. *See, e.g.*, *Rodriguez v. Chex Sys., Inc.*, 730 F. Supp. 3d 36, 39–40 (W.D.N.Y. 2024) (granting 12(e) motion against *pro se* plaintiff who broadly assert[ed] that Defendant violated certain statutes," including non-U.S. law, "without further explanation"); *Porter v. Duval Cnty. Sch. Bd.*, 406 F. App'x 460, 461–62 (11th Cir. 2010) (affirming the district court's granting a 12(e) motion because the plaintiff's original complaint was "vague and ambiguous," "included numerous claims against multiple defendants stated in lengthy, unnumbered paragraphs," and identified the basis for her claims as "article 9 of the Florida Constitution of due process and the United States Constitution of the Fourteenth Amendment due process clause etc."); *Wisconsin Province of Soc'y of Jesus v. Cassem*, No. 17 Civ. 1477, 2018 WL 9801769, at *2–3 (D. Conn. May

24, 2018) (granting 12(e) motion because complaint alluded to a cause of action without actually alleging the claim).

Any missing facts identified by Defendants do not render the FAC or PSAC insufficiently definite. Plaintiffs' failure to include the applicable minimum wage and overtime rates—which Defendants can determine—in the FAC and PSAC does not prevent Defendants from adequately responding to Plaintiffs' allegations, which unambiguously accuse Defendants of relying on an invalid tip credit and failing to pay overtime premiums. *See generally* PSAC. After all, Defendants may refer to the NYLL and associated regulations to identify the minimum wage and overtime rates applicable in New York City during the period of Plaintiff's employment. *See* NYLL § 652(1) (minimum wage pre-2024); § 652(1-a) (minimum wage post-2024); 12 N.Y.C.R.R. § 142-2.2 (state overtime requirement). Defendants are also incorrect that Plaintiffs have not explained "the manner in which [the] alleged shortfall occurred." Mem. at 22. Plaintiffs allege that the shortfall results from (1) Defendants' claiming a tip credit without satisfying the statutory requirements, *see, e.g.*, PSAC ¶ 44; (2) Defendants' failure to pay any, or sufficient, overtime wages for hours worked over 40 per week, *see, e.g., id.* ¶¶ 74, 77; (3) and Defendants' retention of certain tips they collected for pooling, *see, e.g., id.* ¶¶ 52–53, 87–89. Although it is true that the pleadings lacks sufficient detail to adjudicate the total "wages allegedly owed," Mem. at 2, discovery is the appropriate way to resolve that issue, not a Rule 12(e) motion.

**CONCLUSION**

Accordingly, Plaintiffs' motion for leave to file the PSAC is GRANTED. By **September 17, 2026**, Plaintiff shall file the PSAC on the docket.

Defendants' motion to compel arbitration of Jones' and Parreiras' claims is GRANTED, and those claims are STAYED pending arbitration. The parties are directed to file a status report

regarding arbitration on **March 15, 2027**, or within **14 days** of the conclusion of arbitration proceedings, whichever comes first.

Defendants' motion to dismiss the FAC or, in the alternative, the PSAC is GRANTED IN PART and DENIED IN PART. Defendants' motion to dismiss is GRANTED, without prejudice, as to Milosavljevic's fifth and sixth causes of action. Defendants' motion to dismiss is DENIED as to Milosavljevic's first through fourth and seventh through eighth causes of action.

Defendants' motion for a more definite statement is DENIED.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 43, 50.

SO ORDERED.

Dated: September 14, 2026
New York, New York

ANALISA TORRES
United States District Judge